ESTHER KLEIN, Respondent-Appellant, v NATHAN SHIELDS, as Conservator of the Property of HARRIS J. KLEIN, Appellant-Respondent.

First Department, February 25, 1986

---

### APPEARANCES OF COUNSEL

*Leonard Seiser* of counsel *(Morgenstern, Winnick & Cuneo,* attorneys), for respondent-appellant.

*Irving Shafran* for appellant-respondent.

### OPINION OF THE COURT

KASSAL, J.

Harris and Esther Klein were married on December 15, 1930, and separated 15 years later, in 1945. In 1945, Harris obtained an invalid, unilateral Mexican divorce and married his present wife, Celia. In December 1957, a judgment of separation was entered in favor of Esther on the ground of abandonment, awarding her alimony in the sum of $475 per week, which was thereafter reduced to $300 per week on September 2, 1976. Harris obtained a conversion divorce on April 29, 1971 and lawfully married Celia.

In 1976, Esther brought this action pursuant to Domestic Relations Law § 170-a to recover "an amount equivalent to the value of any economic and property rights" which she was deprived of as a result of the judgment of divorce. The statute provides that where there has been a separation prior to January 21, 1970, either by decree, judgment or agreement, and, thereafter, a conversion divorce under Domestic Relations Law § 170 (5) or (6), the spouse against whom the divorce was obtained may recover the value of the economic and property rights which he or she was deprived of by the divorce. The recovery is determined as if the death of the other spouse occurred on the date immediately prior to the divorce.

The legislative provision offers protection to a spouse who had been separated at a time when such separation did not furnish a ground for divorce, and who had a reasonable expectation that the parties would remain husband and wife, entitled to retain certain marital rights, namely, a right of inheritance. Thus, the statute accords a remedy to a spouse who has lost valuable inheritance rights as a result of the Divorce Reform Law (Laws of 1966, ch 254) and the Court of Appeals decision in *Gleason v Gleason* (26 NY2d 28), declaring the reform law applicable to separation decrees obtained prior to its effective date *(see, Coffman v Coffman,* 60 AD2d 181). In such an action to recover the equivalent of this intestate share, the burden is on the plaintiff to prove the value of the estate on the critical date, namely, the day before the divorce *(see, Pournaras v Pournaras,* 75 AD2d 546).

Following a hearing, Justice Grossman, in a careful opinion, analyzed the statute and, applying it to the facts here, valued the net worth of the estate at $3,262,684.46. In doing so, Trial Term properly took into consideration a June 15, 1971 financial statement prepared, signed and presented by Harris to a bank on an application for a loan, which reflected a joint net worth of Harris and Celia of $5,107,546. Applying EPTL 4-1.1, the court found plaintiff's intestate share to be $1,091,561.46. It reduced the award by the alimony which plaintiff had received after the divorce ($270,000), treating this as "intervening circumstances" under Domestic Relations Law § 170-a (c). As a result plaintiff was awarded $821,561.46.

We disagree with Trial Term's inclusion in the estate of certain property which had been held as joint tenants, with a right of survivorship. Harris and Celia owned two residences, in Brooklyn and Putnam Counties, which had been deeded to them as joint tenants, with a right of survivorship, not as tenants in common. In including these residences, the court found that, since the 1945 Mexican divorce was invalid, the subsequent marriage to Celia was a nullity and, therefore, the conveyances could not create tenancies by the entirety. It is well settled that where a tenancy by the entirety fails because there is no marriage or the marriage between the parties is void, this will result in the creation of a tenancy in common *(Hildebrand v Hildebrand,* 25 AD2d 698; *Place v Cundaro,* 34 AD2d 698). However, the principle has no application here, since each deed transferred property to Harris and Celia as joint tenants, with right of survivorship, not as tenants by the entirety by virtue of the purported marriage.

Similarly, the art collection, valued at $1,500,000, was held by the parties as joint tenants, with a right of survivorship. This was confirmed in a letter dated March 6, 1967, but this letter did not effect a transfer so as to render the collection a testamentary substitute under EPTL 5-1.1 (b) (1) (D).

Thus, we find that the value of his estate should be reduced by excluding therefrom Harris' share of the value of the residences ($100,000) and one half of the value of the art collection ($750,000). This results in a total net worth of $2,412,684.46 and, under EPTL 4-1.1, plaintiff's intestate share is $808,228.15.

Under these facts, Trial Term appropriately reduced the award by the amount of postdivorce alimony paid to plaintiff, taking into account the long period during which the parties had been separated as an "intervening circumstance". In doing so, however, it is argued that the court erred in providing for a reduction only for alimony after the divorce. This contention overlooks that such payments prior to the divorce were made and presumably fully expended for maintenance and support, not as a substitute for a testamentary or intestate distribution. Reducing the award by alimony payments after the divorce, the statutory fictional date of death, plaintiff is entitled to a net award of $525,928.15.

In reaching this result, we have taken into consideration as "intervening circumstances", the various equitable factors, namely, the age and life expectancies of the parties; their respective financial situations and health; the fact that there are four children (two from each marriage), each with an interest as a prospective heir; that Harris and Esther, who had been married for 15 years, had not lived together for a long period of time, since 1945; Harris' long marriage to Celia; and the fact that the estate, to a large extent, appreciated in value subsequent to the parties' separation. Contrary to the argument advanced on appeal by defendant, Trial Term did take these several factors into account in reducing plaintiff's award and applied the alimony which had been paid as "a useful guideline in determining an equitable reduction in plaintiff's award." We agree with that determination. In our view, a reduction for alimony after the divorce is a proper guideline since it focuses upon the date of the divorce as the critical date which the Legislature determined for the vesting of the "intestate" survivor's right under Domestic Relations Law § 170-a. As noted, any support payments made prior to

the divorce represent maintenance to the wife and not a distribution of the estate.

We have considered the other arguments raised on the appeal and the cross appeal and find them lacking in merit.

Accordingly, the judgment, Supreme Court, New York County (Louis Grossman, J.), entered June 18, 1985, awarding plaintiff the sum of $821,561.46, representing her share of the property of the conservatee, Harris J. Klein, should be modified, on the law and the facts, to the extent of reducing said award to $525,928.15, and otherwise affirmed, without costs or disbursements.

KUPFERMAN, J. P., SANDLER, SULLIVAN and ASCH, JJ., concur.

Judgment, Supreme Court, New York County, entered on June 18, 1985, unanimously modified, on the law and the facts, to the extent of reducing the award to $525,928.15, and otherwise affirmed, without costs and without disbursements.